**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0351-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAQUA CARMON,

    Defendant-Appellant.

_____

Submitted March 10, 2021 – Decided June 4, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-09-2939.

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Being tried before a jury, defendant Jaqua Carmon made a Reyes[1] motion to dismiss the charge of fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2), at the conclusion of the State's case.[2] Trial judge Mayra V. Tarantino denied the motion. Defendant was subsequently acquitted of second-degree unlawful possession of a handgun but was found guilty of resisting arrest by flight. He was sentenced to a time-served sentence of 297 days and one year of probation.

Defendant appeals his conviction, arguing his acquittal motion should have been granted because the State failed to prove he was aware that the two men who chased him were plain-clothes police detectives; thus, he did not have the mens rea to commit resisting arrest by flight. He also challenges his one-year probationary sentence, arguing the judge erred in balancing the lone aggravating factor considered with the six applied mitigating factors. We are unpersuaded by defendant's arguments and affirm.

---

[1] State v. Reyes, 50 N.J. 454 (1967).

[2] Defendant's motion also sought to dismiss the charge of unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). That request was also denied.

A-0351-19

I.

A defendant may move for judgment of acquittal under Rule 3:18-1 if the State has not proven each element of the crime. The motion may be granted if, viewing all the "direct or circumstantial" evidence in the light most favorable to the State, "as well as all of the favorable inferences which reasonably could be drawn therefrom," no "reasonable jury could find guilt of the charge beyond a reasonable doubt." Reyes, 50 N.J. at 459 (1967) (citing State v. Fiorello, 36 N.J. 80, 90-91 (1961)).

The Reyes standard applies to appellate review of the sufficiency of evidence. See State v. Kittrell, 145 N.J. 112, 130 (1996). "In deciding whether the trial court was correct in denying [a Reyes] motion, we . . . take into account only the evidence on the State's case, unaided by what defendant later developed at trial." State v. Lemken, 136 N.J. Super. 310, 314 (App. Div. 1974).

In order to be found guilty of the fourth-degree flight charge, defendant must have "by flight, purposely prevent[ed] or attempt[ed] to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a)(2). "[A] citizen's duty to submit obtains when the restraint by the police officer is for any lawful purpose even if it does not amount to an arrest." State v. Brennan, 344 N.J. Super. 136, 145 (App. Div. 2001) (citations omitted). "Flight from the

3

scene of a crime, depending on the circumstances, may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017) (citations omitted). The circumstances of flight must "'reasonably justify an inference that it was done with a consciousness of guilt' to avoid apprehension on the charged offense." Id. at 594-95 (quoting State v. Ingram, 196 N.J. 23, 46 (2008)).

A.

The State presented the following evidence. Essex County Sheriff's Office Detective Anthony Piccinno testified that he was conducting surveillance while working with multiple law enforcement officers to stop midlevel street narcotics sales in the city of Newark, when he suspected defendant, Jarrod Nelson, and his co-defendants David Battle, and Quamir Williams were involved in a narcotics transaction.[3] Battle, the suspected purchaser, was arrested as he drove away from the scene. Piccinno testified that although his fellow officers were in undercover attire, all of them had their badges displayed when they moved towards and chased defendant and ultimately arrested him.

---

[3] Co-defendants were not tried with defendant.

Essex County Sheriff's Officer Dominic Petrucci, also part of the investigation, did not arrest Battle but testified that Piccinno radioed him concerning the transaction between Battle, who drove away, and defendant, Nelson, and Williams. Petrucci testified he was wearing undercover attire but was displaying his badge around his neck and identified himself as a police officer when he got out of an unmarked police vehicle to approach defendant, Nelson, and Williams. They "walked away" and ignored his demands "to stop." Defendant began to "pick up [his] pace[]" and eventually ran away, according to Petrucci. While following them, Petrucci saw Nelson discard items into a trash can and defendant discard what appeared to be a handgun in the same trash can. Petrucci stopped to secure the discarded items, leaving other detectives to continue pursuit of them.

Essex County Sheriff's Office Detective Eric Udvarhely testified that he was also in undercover attire with his badge displayed when he and his partner, Anthony Dock, pursued defendant, Nelson, and Williams after Battle was arrested. After going down an alley, Udvarhely doubled back to the street, where he saw defendant "running." He chased defendant, identifying himself as police with his badge displayed, yelling at defendant to "stop." Udvarhely stated defendant was ultimately apprehended and arrested moments later.

A-0351-19

Trial judge Mayra V. Tarantino denied defendant's motion for acquittal. She determined "defendant knew or had reason to know that . . . [Petrucci] and . . . [Udvarhely] were effectuating an arrest[]" for "an alleged drug transaction." She noted they "testified that they, . . . were wearing plain clothes[,] their badges were clearly displayed, and they identified themselves as police officers. They testified [that they said] police officer, stop, and [defendant] did not in fact stop." Because defendant "increased the pace at which [he fled], in order to avoid the police[,]" the judge ruled "that a reasonable [j]ury could find [defendant] guilty of the charge of [r]esisting [a]rrest [by flight] beyond a reasonable doubt."

B.

None of defendant's arguments convince us that Judge Tarantino erred in denying his motion for acquittal. Defendant's primary argument is that the officers were in plain clothes and purportedly displaying their police badges, but the State provided no evidence that he heard them announce they were the police or that he would have seen their police badges, since he was moving away from them. He maintains the State failed to show he had knowledge that the officers were attempting to "effect [an] arrest." State v. Parsons, 270 N.J. Super. 213, 222 (App. Div. 1994). He compares himself to the defendant in State v. Tucker,

A-0351-19

136 N.J. 158, 161-73 (1994), where his conviction for third-degree possession of narcotics with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3), was reversed because the police had no articulable suspicion of criminal activity before chasing him after he spontaneously ran away upon seeing a marked police vehicle and discarded crack cocaine. Defendant asserts that the officers, principally Petrucci and Udvarhely, followed him without knowing that he had committed an offense until he discarded what appeared to be a gun – the charge for which he was acquitted. He also stresses the fact that Udvarhely testified that people sometimes run from police in the neighborhood.

Giving all reasonable inferences to the State's evidence, all the elements of fourth-degree resisting arrest by flight were satisfied. Piccinno testified he suspected defendant was involved in a narcotics deal, which prompted him, as the "spotter," to alert the team of police officers who arrested Battle and pursued defendant and the two other co-defendants, before eventually arresting defendant. Piccinno, Petrucci, and Udvarhely all testified that though they wore plain clothes, they displayed their police badges and identified themselves as police. Petrucci and Udvarhely testified defendant continue to run after they ordered him to stop.

A-0351-19

Defendant's reliance on Tucker is misplaced. The central issue in Tucker was whether the police had a right to seize defendant under the Fourth Amendment. Id. at 161. The defendant was sitting on a curb when the police drove by, upon which point he ran, and the police chased him without any belief he had engaged in any criminal activity. Id. at 161, 173. There was "no evidence . . . that the police commanded defendant to halt . . . ." Id. at 166. Here, the issue was whether there was sufficient evidence that defendant resisted arrest by flight. Unlike in Tucker, the police here had an articulable suspicion that defendant was involved in a drug transaction, and after announcing themselves as police, with displayed police badges, they directed him to stop. Defendant, however, refused to heed the demands, and fled.

Defendant's motion for acquittal was properly denied. Judge Tarantino did not err.

## II.

In sentencing defendant, Judge Tarantino considered aggravating factor nine, need for specific and general deterrence. N.J.S.A. 2C:44-1(a)(9). The judge additionally considered six mitigating factors: one, conduct neither caused nor threatened harm; two, not contemplate conduct would cause harm; eight, conduct was result of circumstances unlikely to recur; nine, unlikely to commit

8

another offense; ten, likely to respond affirmatively to probation; and eleven, imprisonment would cause serious hardship. N.J.S.A. 2C:44-1(b)(1), (2), (8), (9), (10), and (11). She determined that "the mitigating factors preponderate over the lone aggravating factor." In placing defendant on one-year probation, the judge stated that if he were to perform well for six months, he would be permitted to make an application to have his probation terminated for good behavior.

Defendant argues the judge's sentencing decision "is a highly unusual assessment of the aggravating and mitigating factors." He maintains the judge erred in finding that aggravating factor nine was enough to warrant a one-year probationary term, and that community service would have been sufficient to deter.

We discern no basis to overturn defendant's probationary sentence. We do not substitute our judgment with the judge's, see State v. Fuentes, 217 N.J. 57, 70 (2014) (citation omitted), and she did not abuse her discretion in sentencing defendant, see State v. Pierce, 188 N.J. 155, 166 (2006). The judge's weighing of the aggravating and mitigating factors was based upon competent and credible evidence in the record, and the sentence does not shock our judicial conscience. See State v. Bolvito, 217 N.J. 221, 228 (2014).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0351-19